IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE:** | : | **Chapter 13** |
| | : | |
| **MEGAN P. THOMAS, Debtor,** | : | **Bankruptcy Case No. 1:15-bk-00825-RNO** |
| **------------------------------------------------** | : | |
| **CHRISTOPHER W. SPAGNOLA and NATALIE SPAGNOLA,** | : | **Appeal Case No. 1:18-cv-0011-SHR** |
| | : | **Judge Sylvia H. Rambo** |
| **Appellants** | : | |
| **v.** | : | |
| **MEGAN P. THOMAS, KERRY PAE AND KERRY PAE AUCTIONEERS, M&T BANK, YORK COUNTY TAX CLAIM BUREAU, and UNITED STATES TRUSTEE,** | : | |
| **Appellees.** | : | |

## MEMORANDUM

Before the court is a bankruptcy appeal filed by Appellants Christopher W. Spagnola and Natalie Spagnola ("the Spagnolas") wherein the Spagnolas seek reconsideration of the Bankruptcy Court's decision to deny their motion to approve and compel sale of real estate free and clear of liens and encumbrances.

## I. Background[1]

On March 2, 2015, Debtor Appellee Megan P. Thomas ("Debtor") filed a Chapter 13 voluntary petition in the United States Bankruptcy Court for the Middle

[1] Because this court writes for the benefit of the Bankruptcy Court and the parties who are familiar with the case, only an abbreviated recitation of the facts is provided.

District of Pennsylvania. (Doc. 2-1, p. 1 of 270.) The Bankruptcy Court entered an order confirming the Debtor's first amended Chapter 13 plan on October 21, 2015 ("Confirmed Plan"). (*Id.* at 7, 42 of 270.) Residential property owned by Debtor, specifically 3414 Trone Road, Glenville, York County, Pennsylvania ("Trone Road Property"), was to be sold within one year to pay M&T Bank "up to the full amount of its allowed secured claim." (*Id.* at 26 of 270.) However, because the Trone Road Property was partially owned by a non-debtor, Federal Rule of Bankruptcy Procedure 7065 required the filing of an adversary proceeding to sell the property free and clear of the interest of the non-debtor.

An adversary complaint and motion for preliminary injunction was filed before the Bankruptcy Court on March 17, 2016. (Doc. 3-2, pp. 2, 6-26 of 58.) Ultimately, an amended order was issued by the Bankruptcy Court on June 7, 2016, ordering the Debtor to schedule an auction sale for the Trone Road Property if it could not be sold by a real estate broker within three months ("Amended Sale Order"). (*Id.* at 46-58 of 58.) In paragraph 16, the Amended Sale Order further stated:

> Subsequent to the payment of the costs of sale set forth above, the proceeds from the sale of Trone Road shall be paid to M&T Bank on account of the loan secured by its mortgage lien on Trone Road. Nothing contained herein shall approve the sale of the Trone Road Property unless M&T Bank is paid in full on account of the loan secured by its first priority mortgage lien on Trone Road.

(*Id.* at 54 of 58.) On March 21, 2016, in the original bankruptcy proceeding, Debtor filed an application to approve the engagement of an auctioneer requesting that the court approve Appellee Kerry Pae Auctioneers ("Kerry Pae") to auction the Trone Road Property and an additional property. (Doc. 2-1, pp. 60-69 of 270.) Debtor attached the auction contract which provided that Kerry Pae was employed to "sell said property **Absolute Auction** on the 28th day of April, 2016, at six o'clock p.m., to the highest bidder without limit, favor, or reserve." (*Id.* at 65 of 270.) The Bankruptcy Court docket does not reflect that this application was ever ruled upon.

Prior to the auction scheduled for November 12, 2016, counsel for Debtor suggested that M&T Bank have a representative at the sale to credit bid, which "would allow a transfer to the bank if it buys the property [and the property] would be free and clear of all liens, claims and encumbrance, thereby avoiding a Sheriff Sale in the event no buyer is found for a sufficient amount to payoff the loan." (Doc. 3-5, pp. 1-2 of 14.) On November 3, 2016, Debtor's counsel also advised Kerry Pae that: "M&T Bank needs to be paid in full. The last number which we have as owed to M&T is approximately $400,000.00. This is a condition of the auction sale." (Doc. 3-3, p. 1 of 15.)

The Spagnola's placed the highest bid of $255,000.00 on the Trone Road Property at the November 12, 2016 auction. On June 26, 2017, the Spagnola's motioned the Bankruptcy Court for the sale of the property free and clear of liens.

(Doc. 2-1, pp. 70-91 of 270.) The Bankruptcy Court held an evidentiary hearing on September 7 and December 21, 2017. (Docs. 3-4.) There was substantial testimony regarding whether the auction was an absolute auction and whether the Confirmed Plan or Amended Sale Order controlled. Chief Judge Opel took judicial notice that M&T Bank filed proof of a secured claim against the Trone Road Property for $370,811.26. (Doc. 6, p. 10.) He further stated his findings and conclusions on the record, including:

> The confirmed plan in 2D provides for M&T Bank, as a secured claim paid according to modified terms. And the modified principal balance column just says, quote, "See Rider." Both the columns for total payment and interest rate are left blank in the confirmed plan.
>
> The rider, I take it, is Paragraph 8 of the plan, which is headed "Special Plan Provisions," and it provides that, "Additional plan provisions may be included on an attachment." There are no actual provisions listed on Paragraph 8 of the plan, but in plain type it says, quote, "See attached Rider to special provisions of Chapter 13 plan," unquote. I find that this is not a conspicuous provision of the plan, it's neither in boldface nor in a font size which commands the reader's attention.
>
> Page 10 of the plan is headed special provisions of Chapter 13 plan, and includes this language, quote, "M&T Bank shall be paid up to the full amount of its allowed secured claim from the sale of the parcels of real property at 3014 (sic) Trone Road, 808 Poff Road, and 25 Industrial Drive, York, Pennsylvania." . . .
>
> I find that the quoted language in the special provisions concerning the amount of payment to M&T Bank to be less than clear. And any ambiguity in a plan is interpreted

> against Ms. Thomas as the draftsperson of the plan. In my view, this rule construction is not helpful to the Spagnola's argument. . . .
>
> Paragraph 16 of [the Amended Sale Order] provides, quote, "Nothing contained herein shall approve the sale of the Trone Road property unless M&T Bank is paid in full on account of the loan secured by its first priority mortgage lien on Trone Road," unquote.
>
> My conclusion is that the specific provisions of the [Amended Sale Order] concerning the sale of Trone Road prevail over general and non-conspicuous provisions of the plan. This conclusion is largely based upon a general rule of construction that the specific should control over the general.
>
> Further, I find that it's noteworthy that the sale order was entered more than seven months after the confirmation order.
>
> I acknowledge that during the evidentiary hearing in September, there was considerable and, at times, contradictory testimony concerning the Trone Road auction. . . .
>
> So essentially my decision is based upon the effect of the [Confirmed Plan] and [Amended Sale Order], the [Confirmed Plan] language was, in my view, at least blatantly, if not patently, ambiguous as to what M&T was required to receive.
>
> But my result is – my conclusion is that the, again, that the [Amended Sale Order] language controls.

(*Id.* at 11-14.) Ultimately, the Bankruptcy Court denied the Spagnola's motion to approve and compel the sale of the Trone Road Property. (Doc. 1-1.) The Spagnola's

timely appealed the Bankruptcy Court's decision to this court which is now ripe for disposition.

## II. Discussion

This court has appellate jurisdiction in this matter pursuant to 28 U.S.C. § 158(a)(1), which provides district courts jurisdiction of appeals from final bankruptcy court judgments, orders, and decrees. The district court "review[s] the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Am. Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007) (citations omitted). In *In re Shenango Group, Inc.*, 501 F.3d 338 (3d Cir. 2007), the Third Circuit examined the appropriate standard when reviewing a bankruptcy court's interpretation of its own order. Following an analysis of other circuit court of appeals decisions, the Third Circuit held:

> The approach employed in *In re Tomlin* and *National Gypsum* demonstrate that an appellate court must distinguish between the review of a bankruptcy court's application of legal principles and the review of a bankruptcy court's actual interpretation of an ambiguous provision in its own order. . . .
>
> We agree with the majority view that a bankruptcy court's interpretation of its own order ought to be subject to review for an abuse of discretion. This deferential standard should not apply, of course, if the issue being reviewed presents only a question of law. This bifurcated approach both ensures the appropriate role of this Court to review *de novo* pure questions of law, and also accords great weight to the Bankruptcy Court's construction of an order

> with which it is familiar by virtue of its direct involvement in the proceedings.

*Id.* at 346 (internal citations omitted).

In their appeal, the Spagnolas argue that the Bankruptcy court committed an error of law or abuse of discretion by denying their motion to compel the sale of the Trone Road Property. (*See* Doc. 7.) While the Spagnolas' arguments are rather convoluted, their entire appeal, and their original motion to compel sale of the Trone Road Property, is based upon the conclusion that the auction was an absolute auction that bound the Bankruptcy Court and parties to sell the property to the Spagnola's. It should be noted that only one document was docketed in either the original bankruptcy proceeding or the adversary proceeding mentioning an absolute auction – the auction contract attached as an exhibit to the Debtor's application to approve the engagement of an auctioneer. (Doc. 2-1, pp. 60-69 of 270.) This was never ruled upon by the Bankruptcy Court, thus, it cannot be binding on the court or parties.

Applying the Third Circuit's hybrid standard, this court must apply *de novo* review to the initial question of whether the Confirmed Plan and Amended Sale Order are ambiguous, but review the Bankruptcy Court's resolution of these ambiguities for abuse of discretion. *See In re Thorpe*, 540 B.R. 552, 562 (E.D. Pa. 2015). The parties do not dispute that there is ambiguity in either the Confirmed Plan

or Amended Sale Order – they simply disagree regarding the outcome.[2] The Appellees agree with the Bankruptcy Court's finding that the Confirmed Plan was ambiguous and the more specific language of the Amended Sale Order controls. Conversely, the Spagnolas argue that the Confirmed Plan language is conspicuous and it is the Amended Sale Order that is ambiguous.[3] Alternatively, they assert that if the Confirmed Plan is deemed ambiguous, the provisions are an issue of fact, not an issue of law, and that the parties may provide extrinsic evidence to clarify the meaning of the ambiguity.

In reviewing the Bankruptcy Court's decision, this court finds that the Bankruptcy Court did not abuse its discretion in holding that the Amended Sale Order controls and denying the Spagnolas' motion to compel the sale of the Trone Road Property. The Bankruptcy Court heard significant testimony and reviewed documentary evidence regarding whether the auction was an absolute auction or an auction subject to reserve. Ultimately, the Bankruptcy Court reviewed and interpreted the Confirmed Plan and Amended Sale Order finding that the specific

[2] Even if this court needed to determine whether the Confirmed Plan and Amended Sale Order were ambiguous, the court adopts the reasoning and conclusions that the Bankruptcy Court clearly stated on the record. *See supra* pp. 4-5; *see also* Doc. 6, pp. 9-15.

[3] The Spagnolas do not elaborate on how the Amended Sale Order is ambiguous. Rather, they argue that the Bankruptcy Court did not interpret its own order because the Amended Order was entered by Judge France, but it was Chief Judge Opel interpreting the Amended Sale Order due to Judge France's retirement. The court is not persuaded by this logic – the Bankruptcy Court, regardless of which judge issued the order, is still interpreting its own order.

provisions of the Amended Sale Order controlled and M&T Bank needed to be paid in full for the sale of the Trone Road property. Chief Judge Opel recognized that the result could have been different if M&T Bank consented to the auction sale pursuant to section 363(f)(2) of the Bankruptcy Code, or if the sale price was greater than the aggregate value of all liens on the property under 363(f)(3) of the Bankruptcy Code. (Doc. 6, p. 14.)

## III. Conclusion

For the reasons stated herein, the December 21, 2017 judgment (Doc. 1-1) of the United States Bankruptcy Court for the Middle District of Pennsylvania docketed at *In re Megan P. Thomas*, No. 1:15-bk-825, will be affirmed. An appropriate order will issue.

s/Sylvia Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: March 25, 2019